UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MICHAEL W. BASS,

    Plaintiff,

CASE NO. 97-308-CIV-ORL-19KRS

vs.

BOARD OF COUNTY COMMISSIONERS
OF ORANGE COUNTY, FLORIDA,

    Defendant.
_____/

## DEFENDANT'S MOTION TO DISMISS COUNTS I, III, V, VII, AND X
### (and Incorporated Memorandum of Law)

The Defendant, Orange County Board of Commissioners ("the County"), files this Motion to Dismiss Counts I, III, V, VII, and X, and Incorporated Memorandum of Law. Counts I, III, V, VII, and X of the Plaintiff's Complaint must be dismissed as a matter of law, for lack of subject matter jurisdiction, as set forth below.

## SUMMARY

Michael W. Bass ("the Plaintiff") brought this action against the County alleging race discrimination and retaliation in connection with his initially unsuccessful pursuit of a Training Instructor position. Counts I, III, V, VII, and X seek monetary and injunctive relief for discrimination in the hiring process, in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000d and § 2000e), 42 U.S.C. §§ 1981 and 1983, the Florida Civil Rights Act (§ 760.11, Florida Statutes), and the Equal Protection Clause of the United States Constitution.[1]

---

[1] The Plaintiff's Complaint originally sought additional recovery under Title VI of the Civil Rights Act of 1964 and the Florida Veterans' Preference Act (§§ 295.07, .085, Florida

OR472433;1

The Plaintiff also seeks relief for retaliation under Title VII, Section 1981, and the FCRA. These claims, however, are not at issue in this Motion.

The Plaintiff lacks standing to assert any failure to promote claim regarding the Training Instructor position, as he has presented no case and controversy, as required for federal jurisdiction by the United States Constitution. Thus, this Court lacks subject matter jurisdiction over Counts I, III, V, VII, and X, and these Counts must be dismissed.

## BACKGROUND

In October of 1995, the Plaintiff, who is white, sought one of three Training Instructor positions with the County. The County employed a Performance Based Interview ("PBI") system to select candidates for various positions, including the Training Instructor positions. In that type of interview, candidates were asked pre-selected questions to test their responses to hypothetical situations they were likely to encounter in the position they sought.

A three-member panel interviewed the Plaintiff, and twelve other applicants, for three Training Instructor positions. Based on the candidates' performance in this process, the panel assigned each candidate an average score, and ranked the candidates based on their scores. The Plaintiff ranked ninth out of thirteen candidates. The three available positions were then offered to the top three candidates, all of whom were members of the Plaintiff's own protected class. After one of these three successful candidates, Dan Kucik, declined the Training Instructor

---

Statutes), as well as for the County's failure to promote the Plaintiff to the position of Group Supervisor. These claims were dismissed at the summary judgment phase of this case [Docket No. 91], and were not pursued on appeal. See Bass v. Bd. of County Commr's, Orange County, 256 F.3d 1095 (11th Cir. 2001). Thus, these claims are no longer before the Court.

position, the fourth ranking candidate on the list, Henry Preston, was offered, and accepted, the position. Henry Preston is African-American.

The Plaintiff now challenges the selection of Henry Preston over himself to the position of Training Instructor, as being motivated impermissibly by race. The Plaintiff urges that the PBI process was designed, pursuant to an Affirmative Action plan in place allegedly at the time of the interview, to advantage African-American candidates. The County has maintained that the PBI was not conducted pursuant to an Affirmative Action plan, and that race was not considered by the panel in arriving at its ultimate ranking of the candidates. As demonstrated below, however, this dispute regarding the County's reliance on the Affirmative Action plan is of no consequence to this standing analysis.

## I. THE PLAINTIFF LACKS FEDERAL JURISDICTION TO ASSERT CLAIMS FOR THE COUNTY'S FAILURE TO PROMOTE HIM TO TRAINING INSTRUCTOR.

The Plaintiff lacks standing to assert any claim against the County for its failure to promote him to Training Instructor. Thus, Counts I, III, V, VII, and X fall short of the inflexible constitutional minimums necessary to invoke federal jurisdiction, and must be dismissed. The constitutional requirement of standing derives from Article III's limitation of federal jurisdiction, and applies to situations where a justiciable "case or controversy" exists between the litigants. See Warth v. Seldin, 422 U.S. 490, 498 (1975). "Standing is a jurisdictional question. 'The federal courts are under an independent obligation to examine their own jurisdiction, and standing is perhaps the most important of [the jurisdictional] doctrines.'" Engineering Contractors Ass'n

v. Metro Dade County, 122 F.3d 895, 903 (11th Cir. 1997) (quoting FW/PBS, Inc. v. Dallas, 493 U.S. 215, 231 (1990) (internal quotations omitted)).[2]

"In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." Id. A federal court's jurisdiction, therefore, is invoked properly only when the plaintiff himself has suffered some actual injury as a result of the putatively illegal action:

> [T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an **injury in fact** -- an invasion of a legally-protected interest which is (a) concrete and particularized, and (b) actual or imminent, **not conjectural or hypothetical**. Second, there must be a causal connection between the injury and the conduct complained of . . . Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Lugan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (emphasis added). The party invoking federal jurisdiction bears the burden of establishing standing. See id. at 561.

Accepting as true, for the purposes of this Motion only, every legal contention, factual allegation, and analytical paradigm postulated by the Plaintiff in this case, to date, the Plaintiff still fails to establish that he suffered any redressable "injury in fact" when the County selected other candidates to the Training Instructor position. While the Plaintiff has presented torrents of dramatic evidence regarding the presence of Affirmative Action directives, and racial animosity within the County, these facts are immaterial to this standing inquiry, and serve only to distract

---

[2] It should be noted "at the outset that standing cannot be waived and may be asserted at any stage of litigation." Harris v. Evans, 20 F.3d 1118, 1121 n.4 (11th Cir. 1994). See also Florida Assoc. Rehab. v. Florida, 225 F.3d 1208, 1218 (11th Cir. 2000). "[M]ootness - like standing and ripeness - raises . . . [a] basic question of jurisdiction that cannot be waived and goes to the very heart of this 'case or controversy' requirement of Article III." Id. at 1227 n.14 (stating that "[w]hen a motion . . . raises a fundamental jurisdictional issue such as mootness, the court is obliged to consider the merits of the argument regardless of the motion's relative untimeliness").

the Court. Rather, this issue turns on a single, inescapable, statistical conclusion: the Plaintiff would not have received the Training Instructor position, even if he had interviewed in an all-white applicant pool. Thus, he presents no cognizable injury appropriate for this Court's adjudication.

"[W]here a plaintiff challenges a discrete governmental decision as being based on an impermissible criterion and it is undisputed that the government would have made the same decision regardless, there is no cognizable injury warranting relief." Texas v. Lesage, 528 U.S. 347, 351-52 (1999).[3/] The well developed record in this case demonstrates unequivocally that the Plaintiff would not, regardless of the employment of any alleged racial criterion, have been awarded the Training Instructor position. The PBI process utilized by the County to fill the three Training Instructor positions at issue in this case yielded the following rank order of the thirteen candidates:

| Name | Race | Score | Selected |
|---|---|---|---|
| Gina Mc Collum | W | 16 | X |
| Dan Kucik | W | 15 | X (did not accept) |
| Donna Reed | W | 13 | X |
| Henry Preston | B | 13 | X (selected in place of Kucik) |
| David Cohen | W | 12 | |
| Karen Barber | W | 12 | |
| Henry Butts | W | 11 | |
| John Russell | B | 10 | |
| **Michael Bass** | W | **8** | |
| Victoria Quick | W | 7 | |
| Stephen Manning | W | 5 | |

---

[3] Although Lesage does not reference the "standing" doctrine expressly in its analysis of this issue, the Eleventh Circuit has recognized the applicability of Lesage to questions of standing. See Wooden v. Board of Regents, Univ. Sys., Ga., 247 F.3d 1262, 1277 (11th Cir. 2001) (describing "Lesage as clarif[ying] the standing requirements for plaintiffs challenging race-based . . . policies") (internal quotations omitted).

| Thomas Wheeler | W | 4 |
| Terry Boston | W | 4 |

See Bass, 256 F.3d at 1100 n.2.

It is undisputed that the PBI panel selected the successful candidates strictly on the basis of their rank order by score, whereby the Plaintiff placed ninth. Thus, even if every African-American candidate were removed from the pool, six white candidates still remain ahead of the Plaintiff.[4] Thus, as a matter of statistical fact, the Plaintiff could not have been selected to the position in an all-white applicant pool.

In Grahek v. St. Paul, 84 F.3d 296 (8th Cir. 1996), the Eighth Circuit analyzed a set of facts analogous to those presented in this case. In Grahek, all Civil Service applicants were required to pass an examination. See id. at 297. Those who passed the exam were placed on a certified list, from which candidates were pulled to interview for openings. A city rule required that these candidates be drawn from three separate groups: current city employees, the highest ranked (by score) non-city employees, and the highest ranked minority applicants. The non-minority plaintiffs in Grahek claimed that this final category discriminatorily prevented their referral for consideration.

The court concluded that the plaintiffs lacked standing to pursue these claims, because "even if no persons from the separate group of protected-class applicants had been included in the certified lists ... none of the three plaintiffs [based on their rankings] would have been placed on the list." Id. at 298. The court noted that the mere expansion of opportunity for minorities to interview was insufficient alone to establish an "injury in fact." See id. The court stated that "a

---

[4] The Plaintiff brings his action alleging race discrimination only. Thus, the only demographic consideration relevant to this analysis is race.

plaintiff [must] show injury in fact, not a conjectural or hypothetical reduced opportunity resulting from implementation of a hiring plan." Id. at 299. The Plaintiff's claims in this case rest squarely on just this sort of "conjectural or hypothetical reduced opportunity" theory and cannot be sustained. See also Lesage, 528 U.S. at 352 (dismissing the plaintiffs claim for monetary damages relating to the affirmative action rejection of his application to a state univeristy, because the plaintiff would have been denied admission under a race-neautral policy); Byers v. Albuquerque, 150 F.3d 1271 (10th Cir. 1998) (holding that the plaintiffs lacked standing to pursue their failure to promote claims, despite minority pool expansion, where they would not have made the promotional list even absent the alleged affirmative action policies);

The Plaintiff may attempt to argue that he has met his burden by demonstrating that the entire PBI process was tainted in favor of racial minorities, which allowed these minorities a greater opportunity than white applicants to succeed generally in the PBI process, such that these scores and rank order are too unreliable to consider. This argument fails at a fundamental level. First, not a single African-American scored in the top three places under the allegedly African American-friendly process.[5] The Plaintiff's argument depends on a most illogical and legally insufficient conclusion: that this racial-taint also somehow placed the six white candidates, who

---

[5] The Plaintiff may counter that Henry Preston, the African-American candidate selected after Dan Kucik declined the position, scored, as a de facto matter, in the top three ranks, because the PBI panel knew that Kucik would be offered, and accept, the Group Supervisor position. Not only does this argument require an irrational leap of logic, it lacks any factual support from the record. Indeed, the record reveals no evidence even suggesting that the Training Instructor PBI panel had any knowledge whatsoever regarding the operation or conclusions of the Group Supervisor PBI panel. Moreover, even if the Plaintiff's argument is taken as true, and Preston had actually ranked in the top three positions, the fact remains that the Plaintiff was outranked by six members of his own protected class, making his selection to the position impossible regardless of Preston's rank.

scored ahead of the Plaintiff, at an advantage over the Plaintiff. Although axiomatic, it bears repeating in light of these facts, that no cause of action exists for discrimination favoring members of a plaintiff's own protected class. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

### A. The "Equal Footing" Jurisprudence Does Not Rectify The Jurisdictional Shortcoming Of The Plaintiff's Claims.

To resurrect jurisdiction over his failure to promote claims, the Plaintiff may attempt to rely on a line of Supreme Court cases that, under some facts, allows for a relaxed analytical approach to standing challenges. See Adarand Constructors, Inc. v. Pena, 515 U.S. 200 (1995); Florida General Contractors v. Jacksonville, 508 U.S. 656 (1993); and Regents of University of California v. Bakke, 438 U.S. 265 (1978).[6] These cases stand for the general proposition that a plaintiff who challenges an ongoing race-conscious program and seeks "forward-looking" injunctive relief, need only establish that he was denied "equal footing" to compete against minority candidates, rather than establishing affirmatively that he would have received the position in the absence of racial considerations. See Lesage, 528 U.S. at 352 (interpreting and quoting Florida Gen. Contractors and Adarand).

The Plaintiff's reliance on this line of cases would be misplaced for two reasons: first, this line of cases is factually distinguishable from the case at bar, and, second, the Plaintiff's claims for injunctive relief, the only claims over which these cases may have applicability, are, in any event, moot.

---

[6] In the interest of brevity and clarity, these cases will be referred to collectively as the "equal footing" cases.

### 1. The "Equal Footing" Jurisprudence Is Factually Inapposite.

This line of "equal footing" cases is factually distinct from the case at bar. In these cases, the defendants employed strict set-aside programs, which denied the plaintiffs an opportunity to compete for all open positions. See Bakke, 438 U.S. at 765 n.14 (finding that 16% of the available positions were set aside to racial minorities, the Court concluded that the plaintiff's "injury in fact" resulted from "the University's decision not to permit Bakke to compete for all 100 places in the [medical school] class, simply because of his race"); Florida Gen. Contractors, 508 U.S. at 656 (setting aside 5% to 16% of all contracts to minority bidders); Adarand, 515 U.S. at 168 (setting aside 5% of all prime and sub-contract awards to racial minority bidders). See also Cone Corp. v. Hillsborough County, 5 F.3d 1397 (11th Cir. 1993) (distinguishing between challenges to defendants utilizing set-aside programs); Grahek 84 F.3d at 298 (concluding that the plaintiff's reliance on this line of cases was inappropriate in the absence of a set-aside policy).

"[I]n the **context of a challenge to a set-aside program**, the injury in fact is the inability to compete on an equal footing in the bidding process, not the loss of the contract." Florida Gen. Contractors, 508 U.S. at 597 (internal quotations omitted)(emphasis added). In this case, the Plaintiff has not alleged, nor could he, that the County set aside a particular number of Training Instructor positions for racial minorities. The candidates selected originally to the position included no African-Americans at all. Indeed, had one white candidate not declined the offer, no African-American ever would have received the position.[7] Rather than demonstrating "unequal

---

[7] At most, the Plaintiff has alleged that the applicant pool was expanded inappropriately on racial grounds, when Henry Preston, an African-American, was deemed qualified to interview based on credentials that were later discovered to be false. Even if his admission to the pool could somehow be proven by the Plaintiff to have been racially motivated, it does not confer standing upon the Plaintiff. See Grahek, 84 F.3d at 298 (concluding that the

footing," the selected list reveals that white candidates actually fared better than African-American candidates. Thus, the County did not deny the Plaintiff the opportunity to compete against racial minorities on "equal footing," and this jurisprudence has no applicability to the present case.

Because the "equal footing" cases are inapplicable to this case, the Plaintiff must demonstrate that he would have received the position in the absence of improper racial considerations. See Lesage, 528 U.S. at 352; Grahek, 84 F.3d at 298. As discussed above, the Plaintiff cannot meet this burden, and he, therefore, lacks standing to pursue both monetary and injunctive relief for his failure to promote claims. Accordingly, Counts I, III, X, XII, and X should be dismissed in their entirety.

2. **Alternatively, The "Equal Footing" Jurisprudence Is Applicable To The Plaintiff's Injunctive Actions Only, Which Are Now Moot.**

Even if these "equal footing" cases were factually indistinct from the present case, they would nevertheless fail to provide the Plaintiff with standing to pursue monetary damages, as these cases would be applicable only to the Plaintiff's requests for injunctive relief. "[W]here there is no allegation of an ongoing or imminent constitutional violation to support a claim for forward-looking relief, the government's conclusive demonstration that it would have made the same decision absent the alleged discrimination precludes any finding of liability." Lesage, 528 U.S. at 352. The Eleventh Circuit has interpreted the phrase "forward-looking relief" as drawing a distinction "between the requisite injury for seeking damages and that necessary to seek prospective injunctive relief." See Wooden, 247 F.3d at 1277.

The Plaintiff's injunctive claims in this case, however, cannot survive a jurisdictional challenge, despite the application of the "equal footing" test, because these claims are now moot. "A case is moot when the issues presented are no longer 'live' or the parties lack a legally

cognizable interest in the outcome of the litigation, such as where there is no reasonable expectation that the violation will occur again or where interim relief or events have eradicated the effects of the alleged violation." Saladin v. Milledgeville, 812 F.2d 687, 693 (11th Cir. 1987) (citing County of Los Angeles v. Davis, 440 U.S. 625, 631 (1979)).

The Plaintiff's injunctive claims regarding the Training Instructor position are indeed moot. First, the dispute regarding the particular Training Instructor position the Plaintiff sought, has been resolved. The Plaintiff received the Training Instructor position on December 18, 1995, following the initial denial of the position, and before he filed this Complaint.[8/] See Complaint at ¶ 63 [Docket No. 1]. Moreover, the controversy regarding the County's use of the alleged Affirmative Action plan is moot. The County is no longer utilizing the plan, and has promised, pursuant to a valid settlement agreement, reached in another fire division discrimination case, never to utilize the plan again in the future.[9/] See Saladin, 812 F.2d at 693 (concluding that claims were moot where City abated the challenged practice, and promised never to resume the practice). As a consequence, there appears to be no remaining injurious effect from the alleged violation regarding the Affirmative Action plan. Nor has any evidence suggested that the County will resume those Affirmative Action practices. See id. (dismissing for mootness where there was no basis to conclude that the City would reinstate the challenged practice).

---

[8] The Plaintiff received the Training Instructor position in settlement for a union grievance he brought against the County, not because his PBI rank was re-evaluated or otherwise determined to qualify him for the position.

[9] See Nolin, et al., v. Bd. of County Commr's, Orange County, Case No. 94-620-CIV-ORL-18, (later consolidated with a civil action commenced by the remaining Plaintiffs, Case No. 96-111-CIV-ORL-18). A true and correct copy of this Nolin Agreement is attached as exhibit "A."

The Court, in this case, is left with no further remedial options to the Plaintiff's injunctive claims. "If a controversy becomes moot at any time during the trial or appellate process, the Court involved must dismiss the suit for want of jurisdiction . . . . Mootness arguments can be pressed by any party at any time[.]" Florida Assoc. Rehab, 225 F.3d at 1218. Thus, to the extent that the Plaintiff seeks injunctive relief on Counts I, III, V, VII and X, his claims must be dismissed for lack federal jurisdiction.

The Plaintiff can establish no "injury in fact" as to either his monetary or injunctive claims for failure to promote. As such, the Plaintiff lacks standing to pursue these claims. Moreover, the injunctive relief sought by the Plaintiff is now moot. Accordingly, the Plaintiff lacks federal jurisdiction under Article III of the United States Constitution, and Counts I, III, V, VII, and X must be dismissed.

## CONCLUSION

The Court should dismiss Counts I, III, V, VII, and X of the Plaintiff's Complaint.

Respectfully submitted,

_____
Kevin W. Shaughnessy, Esquire
Florida Bar No.: 0473448
Teresa Herrmann, Esquire
Florida Bar No.: 0881046
Deborah H. Rulo, Esquire
Florida Bar No.: 0485111
**AKERMAN, SENTERFITT & EIDSON, P.A.**
255 South Orange Avenue
Post Office Box 231
Orlando, Florida 32802
Phone: (407) 843-7860
Fax: (407) 843-6610

**COUNSEL FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished via facsimile and U.S. Mail, postage prepaid, to Joseph Egan, Jr., Esquire, Egan, Lev & Siwica, P.A., P.O. Box 2231, Orlando, FL 32802, on this 6th day of February, 2002.

_____
Deborah H. Rulo, Esquire

# ADDITIONAL ATTACHMENTS NOT SCANNED

____ Exceeds scanner's page limit
____ Physical exhibit prevents scanning
✓ Other: _____

# **REFER TO COURT FILE**

Revised 09/15/99